## Leverett W. Fisher v. The People.

*Charge to Jury: Ambiguous, hypothetical and special requests: Act of 1869 relative to instructing juries.* Where a request to charge is susceptible of two interpretations, and the charge is correct upon the theory that the most obvious of these interpretations is the true one; and the interpretation relied upon to show that the charge was erroneous, was not specially brought to the attention of the Court; if it appears from the whole charge given, that the subject involved in the request was fairly left to the jury, the charge will be sustained.

It is proper to refuse a request to charge upon an assumption of facts, which, from the evidence in the case, the jury would not be authorized to find.

A specific request to charge may be correct, and the refusal of it not be error; if the Judge, in the written charge actually given, fairly leaves to the jury the question substantially raised by the request. This is true since, as it was before, the passage of the Act of 1869 (p. 113) to declare and establish the practice in charging and instructing juries.

*Witnesses: Credibility when impeached.* There is no positive rule of law which excludes from consideration by a jury the uncorroborated testimony of a witness, who admits that he had perjured himself on a former trial. Such a disregard of his oath is enough to justify the belief that he is capable of any amount of falsification. (*People v. Knowles, 15 Mich., 408.*) But his credibility, under such circumstances, is exclusively for the jury, and there is no rule of law which prevents their giving credit to such a witness if they, in fact, do believe him.

*Heard April 5.   Decided April 12.*

FISHER *v.* THE PEOPLE.

Error to Kalamazoo Circuit.

Fisher was charged on the information of the Prosecuting Attorney of the County of Kalamazoo, with the larceny of a heifer, " of the goods, chattels and property of A. B. Dorrance."

On the trial Dorrance testified "that he had a light red heifer, which he turned into the road, and shortly afterwards missed her. That he bought the heifer and paid for it. That it was taken care of by him up to the time of being turned.into the road. * * * That he bought the heifer of one Hiram Billings, and had furnished the pasture, and feed, and hay for it entirely since purchasing it. That he (witness) had a daughter, Mary Dorrance, residing with him." On his cross examination he testified that upon the examination of the said respondent before the Justice who issued the warrant in this case, he, the said witness testified among other things, as follows : " The heifer does not belong to me. She is the property of my oldest girl. I have the care of her. I bought this heifer for my daughter, and with her money. Part of it was hers. I furnished the balance. I have her in my care, and am responsible for her. I have the heifer now in my charge."

The witness further testified, that on returning home from that examination, he told his wife what he had sworn to, and she said she didn't get any money of Mary, that he had enough of his own. And further, that his wife paid for the heifer in his absence from home, and, as he then supposed, with his daughter's money. That he learned from his wife after the examination, that she paid his, and not his daughter's money for the heifer. That he bought it, intending to present it to his daughter, but had never done so, and that his daughter knew nothing about it, but that he should have given it to her if it had not been stolen.

Byron Francisco was called on behalf of the People, and testified that he is 22 years of age. That the respondent came to him in the month of June, 1868, and asked if they could not find " some critter or other that they could drive

away, sell it, and get some money." That at this time the heifer alleged to have been stolen, was in the field of the witness and his brother in the township of Climax, in said County; or, in the language of the witness, "in our wood lot;" the witness and his brother living with their mother. That he, the witness, told respondent of this heifer. That afterwards respondent came and looked at the heifer, and agreed with the witness and his brother, Jasper Francisco, to assist him in driving the heifer to Battle Creek to sell it. The witness further testified, that a short time before this trial, respondent told him that if he, witness, should testify against the respondent, he would not leave the Court room alive.

Upon cross-examination he further testified, that at a former trial of said cause in said Court, at the February Term, 1869, he, said witness, was sworn and examined as a witness for the respondent. That such testimony given by the witness on the said former trial, was false, but that he had testified just as Fisher told him to.

Jasper Francisco was also sworn and testified, that he was twenty years of age. That the respondent came to the witness and his brother, Byron Francisco, and asked if there wasn't something they could get hold of, some stock, and get some money. That the witness and Byron Francisco told the respondent that there was a heifer down in their woods, and if he wanted to drive it away he might. That afterwards respondent went and looked at the heifer, and said that it would do, but said nothing about its being his, respondent's heifer. That on the day following, the respondent came to their house, and witness went home with him. That in the night, they, the respondent and the witness, took the heifer and went with it to Battle Creek, where respondent offered it for sale, representing that he resided in Wakeshma. That all three took the heifer and drove it away together. The witness further stated that he swore

falsely on the former trial, on account of threats which the respondent had made.

The counsel for the respondent, requested the Court in writing, to charge the jury:

7th. " That if the jury entertain a reasonable doubt as to whether the heifer in question was the property of A. B. Dorrance, or Mary Dorrance, then the jury must give the benefit of that doubt to the respondent, and acquit."

9th. That if the jury find that Jasper and Byron Francisco took the heifer from the actual or constructive possession of the owner, and impounded it in their own field, and afterwards delivered the said heifer to the respondent, then the taking of the heifer from the possession of the Franciscos, with their consent, would not be larceny, as there would be no trespass in such a taking." Which requests the Circuit Judge refused, and the counsel for the respondent excepted.

And the said Circuit Judge did further charge and instruct the jury in writing, and upon his own motion, among other things, as follows :

" It is claimed by the respondent that the daughter of the alleged owner of the heifer in controversy, was the sole absolute owner, and that her father, A. B. Dorrance, had no title, or had not such a title as supports the allegation in the information of ownership. If you find from the testimony that Mary Dorrance was the real owner, you will then inquire whether, under the rules I have indicated, A. B. Dorrance had a special property or interest in the heifer."

And the said Circuit Judge, on his own motion, further charged and instructed the said jury, among other things, as follows :

" While it is not the business of the Court to comment on the testimony, yet, in view of the peculiarity of some of it, I feel it to be my duty to say to you, that while it is true, that, when it is manifest to the jury that a witness has willfully sworn false, touching any of the material facts

involved in the case, then the testimony of such witness is not, unsupported by other proof, to be considered worthy of belief; yet it is for you, from all the circumstances in the case, to say whether, if the witness has sworn falsely, there was any reason, justification or excuse for committing perjury. For myself, I can conceive of no possible excuse for perjury in any case. You must, however, look at this matter, in view of all the circumstances—in view of the known frailty of human nature, unaided and unregenerated by the power of Him who is the source of truth, and say upon your oaths what, and how much of the testimony you believe to be true."

To the last paragraph of which charge of the said Circuit Judge, upon his own motion, commencing with the words, " While it is not the business of the Court to comment on the testimony," counsel for the respondent excepted.

The jury found the defendant guilty; and the rulings of the Circuit Judge are brought into this Court for review, upon exceptions settled as provided by the statute.

*May and Buck*, for plaintiff in error.

I. The Court erred in refusing to charge the jury as requested by counsel for the respondent in the 7th request.

The prosecution sought to prove that the heifer alleged to have been stolen was owned by A. B. Dorrance, and insisted that if Mary Dorrance were the owner, A. B. Dorrance was a bailee, and that the ownership was properly alleged in the information. The defense, which the respondent sought to establish on the trial, was, that the heifer in question was the property of the respondent, and that he took it as his own.

This request—giving it the construction which we claim for it—was, that the Court should charge the jury, that if they should entertain a reasonable doubt whether the heifer was the property of either A. B. Dorrance or Mary Dorrance, they should acquit the respondent.

Now if the heifer was the property of the respondent, it was clearly not owned by either A. B. Dorrance or Mary Dorrance, and the respondent was entitled to the benefit of every reasonable doubt upon that subject.—*3 Gr. on Ev.*, § *157, n 1; 2 East P. C., 659; Roscoe's Crim. Ev., 591; 1 Starkie's Ev., 571; 3 Gr. Ev.*, § *29; Com. v. Webster, 5 Cush., 296, 313, 317, 319; Sumner v. The State, 5 Blackf., 579.*

The refusal of the Circuit Judge to charge as requested, was tantamount to charging the jury that if they should entertain a reasonable doubt whether the heifer was not, after all, the property of the respondent, still they should convict.

But even if the request would bear the strained and forced construction which the prosecution seeks to put upon it, and if it were a request to charge the jury, that if they should entertain a reasonable doubt whether the heifer was not the property of Mary Dorrance instead of A. B. Dorrance, still it was error for the Court to refuse so to charge.

For, the property was laid in the information as being in A. B. Dorrance, and it was incumbent on the prosecution to prove this allegation beyond reasonable doubt.—*3 Gr. Ev.*, § *161; Wharton's Am. Cr. Law*, § *1818, 1820.*

There was no proof upon the trial tending to show that there was a bailment of the heifer to A. B. Dorrance.

At most, A. B. Dorrance would be only a custodian of the heifer, and in that case the ownership was not correctly stated in the information, and the respondent was entitled to an acquittal.—*Roscoe's Cr. Ev., 600; 2 Bishop on Cr. Law*, § *722; Wharton's Am. Cr. Law*, § *1820.*

II. The Court erred in refusing to give the 9th request to charge on the part of the respondent. Every larceny includes a trespass, and where there is no trespass committed by the accused, he is not guilty of larceny.—*Roscoe's Cr. Ev., 595; Wharton's Am. Cr. Law*, § *1802.; 2 Bishop on Cr. Law*, § *703; 1 Bishop on Cr. Law*, § *345.*—In this request

the facts assumed were, that the trespass had been committed by the witnesses Jasper and Byron Francisco, and that the taking of the heifer from them by the respondent was with their consent. In such a case the respondent would not be guilty of larceny. The jury were authorized to find that the witnesses Jasper and Byron Francisco took the heifer, intending to steal it. In such a case the respondent, if he received the heifer afterwards, would not be guilty of larceny, but at the most, could only be convicted of receiving stolen goods.

III. The Court erred in charging the jury that it was for them to say whether, if a witness had sworn falsely, there was any reason, justification or. excuse for committing perjury.

*Dwight May, Attorney General,* for defendants in error.

Fisher was charged in the Kalamazoo Circuit Court with the larceny of a heifer. It appears from the record that testimony was offered tending to show that the heifer was the property of the complainant, A. B. Dorrance, or his daughter Mary; and that if the property of the daughter, it was a gift to her, and remained in the possession of the father. There is no proof that she accepted the gift, or even knew of it. Upon these facts the respondent requested the Court to charge " that if the jury entertain ·a reasonable doubt as to whether the heifer in question was the property of A. B. Dorrance or Mary Dorrance, then the jury must give the benefit of that doubt to the respondent, and acquit."

1. The heifer might be the property of both. The proposition is not, that the heifer was not the property of either. In such case—where the two had a property in the animal—it could be charged as the property of either. The charge upon the question of ownership was full and correct. —*2 Bishop Crim. Proc., 683; State v. Somerville, 21 Maine,*

*14; State v. Groat, 22 Maine, 171.*—(*a*) Goods stolen from a thief may be alleged as belonging to the first thief, or the true owner.—*Ward v. The People, 3 Hill, 396; Same case, 6 Hill, 144.*—(*b*) If the "reasonable doubt" referred to in this request, had excluded both father and daughter, then it might be correct. (*c*) The jury have found that the heifer was the property, at the time of the larceny, of A. B. Dorrance.

2. From the testimony it appears that the heifer was left in the highway by the complainant, with his other cattle, and that she in some way got into the lot of Jasper and Byron Francisco, who, with the aid of the respondent, took her therefrom to Battle Creek. Upon these facts the Court refused to charge "that if the jury find that Jasper and Byron Francisco took the heifer from the actual or constructive possession of the owner, and impounded it in their own field, and afterwards delivered the said heifer to the respondent, then the taking of the heifer from the possession of the Franciscos, with their consent, would not be larceny, as there would be no trespass in such taking."

(*a*) There is no proof in the case upon which to base this request. The proof shows that the three parties were *particeps criminis*—accomplices of each other in the larceny. It no where appears that the Franciscos had any right to put the heifer "in their wood-lot," or to impound the heifer, or that the heifer was not lawfully in the highway, or that the heifer was committing any trespass upon the premises of the Franciscos. They, therefore, had no consent to give, and could give none. They were all thieves, and all equally guilty.

3. The 3d and 4th assignments of error—as to the credit to be given to the testimony of the two Franciscos—may be disposed of together.

This portion of the charge contained the law as established by this Court, and was as favorable to the respondent

as he had any right to expect.—*People v. Knowles, 15 Mich., 408; Com. v. Wood, 11 Gray, 93; Com. v. Billings, 97 Mass., 406.*

CHRISTIANCY, J.

The defendant was convicted of stealing a heifer, the property of one A. B. Dorrance.

The first error assigned is that the Court refused to charge, as specially requested, " that, if the jury entertain a reasonable doubt as to whether the heifer in question was the property of A. B. Dorrance or Mary Dorrance, then the jury must give the benefit of that doubt to the respondent and acquit."

As there was a dispute whether the heifer was the property of A. B. Dorrance, or that of his daughter, Mary Dorrance, and it is now claimed, that there was also a dispute whether it belonged to either of them, or to the respondent, the request is ambiguous, if in fact it was claimed on the trial that the heifer belonged to the respondent. And in this aspect of the case, it is not easy, if it be in fact possible from the language, to determine whether the doubt referred to, was a doubt as to which of the two Dorrances the heifer belonged to, or a doubt whether it belonged to either, or to the defendant. If the first was the meaning of the request, it was inconsistent with any claim that the heifer was the property of the respondent himself. If the second is the true interpretation, then the request was consistent with such claim.

The counsel for the prisoner insisted that the second is the true interpretation ; and there was some evidence in the case, tending in some degree at least, to show that the heifer was his, and from which it was competent for the jury so to find, unless the defendant upon the trial, expressly or by implication, from the course of the defense, admitted that he was not the owner.

We have not all the proceedings on the trial before us, nor all the evidence. But it would seem from a part of the charge given, and to which no exception was taken, that the respondent must have rested his defense in this particular, not upon the ground of any claim to the property as his own, but that it was the property of Mary Dorrance, and not, as charged in the information, that of A. B. Dorrance, since the Court tells the jury: " It is claimed by the respondent that the daughter of the alleged owner of the heifer in controversy, was the sole, absolute owner, and that her father, A. B. Dorrance, had no title, or not such title as supports the allegation in the information of ownership." It is not likely that this statement as a part of the charge, would have been allowed to pass without exception, if untrue in fact. And it may therefore be safely relied upon as a true statement, of what the defendant claimed on the trial. We are satisfied, therefore, that the interpretation, first above given, is the true one, and that it must have been so understood by the Court and jury, if understood at all. Upon any other interpretation, it was too ambiguous to make it erroneous to refuse it. But upon this interpretation, (and we are inclined to think upon either interpretation suggested,) the charge actually given by the Court, to which we refer, without repeating it here, fairly left to the jury, the question intended to be raised by the request. And, we are satisfied that since, as well as before, the act of 1869 (*Sess. Laws, vol. 1, p. 113*), however correct any specific request to charge may be, its refusal will not be error, if the judge in the written charge actually given, fairly leaves to the jury the question substantially raised by the request.

The jury will always better understand a charge, given as one connected whole, than if the same matter were broken up into separate and detached portions, which are more likely to confuse than to enlighten.

The first error, therefore, is not well assigned.

FISHER *v.* THE PEOPLE.

The second assignment of error, is that the Court refused to charge "that, if the jury find that Jasper and Byron Francisco took the heifer from the actual or constructive possession of the owner, and impounded it in their own field, and afterwards delivered it to the respondent, then that taking of the heifer from the possession of the Franciscos with their consent, would not be larceny, as there would be no trespass in such taking."

It is quite unnecessary to determine whether the conclusion of law asserted in this request would, or would not result from the facts supposed; since we are satisfied from the record, that the supposed facts are assumed without any evidence in the case fairly tending to prove them. In other words, the request assumes a state of facts, which no evidence in the case tended to prove, which the jury could not have found from the evidence, and which it would have been wrong in the Court to assume they could have found.

There was no evidence tending to show that the two Franciscos had impounded the heifer in their own field, or that they delivered her to the defendant. All that appeared was that the heifer was in the woods or wood lot of the Franciscos, without anything to show how she came there. And instead of the Franciscos delivering the heifer to the respondent, the evidence tends to show that he and Jasper Francisco stole and drove her off in concert with Byron Francisco, all three being equally concerned as principals in the larceny. There was nothing, in any degree, tending to show that the property or possession of the owner had been so far divested, as to prevent the owner from maintaining trespass for killing or taking the heifer, by any third person at the time it was taken by the respondent and the Franciscos.—*1 Chitty's Pl. 194 to 196 ; Owen v. The State, 6 Humph. 330; 2 Bish. Cr. Pr. § 683, note 4.*

There was no error, therefore, in refusing this request.

Two of the witnesses who testified against the defendant on this trial, testified that they had, on a former trial of

the same cause, falsely testified in his favor, and knowingly given a false account of the transaction in question; influenced thereto, as they now testified, by threats of the respondent, that, if they testified against him, they should not leave the court room alive.

With evident reference to this the Court charged that: "While it is not the business of the Court to comment on the testimony, yet in view of the peculiarity of some of it, I feel it to be my duty to say to you, that while it is true, that, when it is manifest to the jury that a witness has willfully sworn false, touching any of the material facts involved in the case, the testimony of such witness is not, unsupported by other proof, to be considered worthy of belief; yet it is for you, from all the circumstances in the case, to say whether, if the witness has sworn falsely, there was any reason, justification or excuse for committing perjury. For myself, I can conceive no possible excuse for perjury in any case. You must, however, look at this matter in view of all the circumstances, in view of the known frailty of human nature, unaided and unregenerated by the power of Him who is the scource of truth, and say upon your oaths what, and how much of the testimony you believe to be true."

This charge was excepted to and is assigned as error. The objection is not that it was a violation of the act of 1869, above cited, in reference to charging juries, nor do we perceive that it is objectionable on this ground. By some courts it has been held that when a witness admits or is shown to have perjured himself, the jury are to be instructed as matter of law that they are not to give credit to his testimony in any respect, or unless corroborated by other evidence. But we held in *People v. Knowles, 15 Mich., 408,* that the credibility of the witness under such circumstances, is exclusively a question for the jury, and that there is no rule of law which prevents their giving credit to such a witness, if they, in fact, do believe him. And this portion of

the charge, when fairly examined and construed, seems to us nothing more in substance than the announcement of this rule, as established by the case last cited.

In stating this rule, however, some portions of the charge, if considered separately, would be unduly favorable to the respondent; since the Court declares that "the testimony of such witnesses is not, unsupported by other proof, to be considered worthy of belief." This, if intended as a rule of law to bind the jury, would be in conflict with the decision in *People v. Knowles.* But the judge immediately corrects this, or explains it by telling the jury that this is a question entirely for them. It is urged that he gave the jury to understand, that there might be some justification or excuse for perjury. But this can hardly be fairly said, when he tells them in the same breath with the language complained of, that for himself he can conceive of no excuse for committing perjury; and finally that they must look at the matter in view of all the circumstances, and say upon their oaths, what and how much of the testimony they believe to be true. We think the charge in this respect was entirely fair, and if calculated to mislead in any way, it was in favor of the defendant.

It is further objected that, if the Court referred to the testimony given on the former trial, then he erred in assuming that the witnesses committed perjury on the former trial instead of the second.

We do not think the charge, upon any fair construction, is open to this objection. The charge must be understood with reference to the evidence given; and, when so understood, could not mislead. The Court assumed nothing, but expressly told the jury that the whole question of the credibility of the witnesses was entirely for them.

We see no error in the record, and the judgment must be affirmed.

The other Justices concurred.