### JAVIS v BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF YPSILANTI

Docket No. 55163. Argued October 10, 1974 (Calendar No. 4).—Decided April 7, 1975.

Chester L. Javis and Gail Javis brought a personal injury action against the Board of Education of the School District of Ypsilanti and Marvin L. Baltzell, a school-bus driver, to recover damages for injuries resulting from a motorcycle-school bus collision. The Washtenaw Circuit Court, William F. Ager, Jr., J., refused plaintiffs' request to give Standard Jury Instruction 3.01(A), "Impeachment of a Party by Prior Inconsistent Statement or Conduct". Instead, the court fashioned its own instruction. The jury returned a verdict of no cause of action. Plaintiffs' motion for a new trial was denied. The Court of Appeals, Holbrook, P. J., and Danhof and Adams, JJ., affirmed (Docket No. 14338). Plaintiffs appeal. *Held:*

1. GCR 1963, 516.6(2) requires that the Standard Jury Instructions be used whenever they are applicable, accurate, and requested by a party.

2. The general harmless error standard of GCR 1963, 529.1 does not control the specific provisions of GCR 1963, 516.6, regarding Standard Jury Instructions.

3. Where there is an omission of, or a deviation from, an applicable and accurate Standard Jury Instruction, prejudicial error will be presumed, provided that an erroneously omitted instruction was properly requested at trial, or, in those cases where error is charged as a result of a deviation from a Standard Jury Instruction, that the deviation was brought to

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 9] 75 Am Jur 2d, Trial §§ 573–575.
[2] 75 Am Jur 2d, Trial § 628.
[4] 75 Am Jur 2d, Trial § 711.
[5] 8 Am Jur 2d, Automobile and Highway Traffic.
[6, 7] 75 Am Jur 2d, Trial §§ 860–863.
Instructions regarding good or bad character of witnesses as affecting their credibility, 120 ALR 1443.
[8] 75 Am Jur 2d, Trial §§ 855–859.

the attention of the trial court prior to the commencement of jury deliberations.

4. The request for SJI 3.01(A) on impeachment was proper, because plaintiffs, as a matter of law, were entitled to an instruction informing the jury that it could consider material variations in Baltzell's testimony as to the speed of the bus and the time required for the cycle to travel approximately 400 feet from the point where it became visible to the point of collision, in assessing the credibility of Baltzell, the bus driver, and the trial court erred in failing to give the requested instruction.

Reversed and remanded for new trial.

M. S. Coleman, J., dissented on the ground that, on the record in this case, there were no facts upon which the jury could find that Baltzell was lying, and therefore an instruction on impeachment was not required. The instruction which was given was clearer in the context of this case than the standard jury instruction requested, and the error, if any, in not giving the SJI was harmless.

48 Mich App 461; 210 NW2d 572 (1973) reversed.

#### Oᴘɪɴɪᴏɴ ᴏꜰ ᴛʜᴇ Cᴏᴜʀᴛ

1. Tʀɪᴀʟ—Iɴꜱᴛʀᴜᴄᴛɪᴏɴꜱ ᴛᴏ Jᴜʀʏ—Sᴛᴀɴᴅᴀʀᴅ Jᴜʀʏ Iɴꜱᴛʀᴜᴄᴛɪᴏɴꜱ— Cᴏᴜʀᴛ Rᴜʟᴇꜱ.

The court rule providing that pertinent portions of Michigan Standard Jury Instructions (SJI) shall be given in each civil case in which jury instructions are given if (a) they are applicable and (b) they accurately state the applicable law requires that the SJI be used whenever they are applicable, accurate, and requested by a party (GCR 1963, 516.6[2]).

2. Tʀɪᴀʟ—Iɴꜱᴛʀᴜᴄᴛɪᴏɴꜱ ᴛᴏ Jᴜʀʏ—Sᴛᴀɴᴅᴀʀᴅ Jᴜʀʏ Iɴꜱᴛʀᴜᴄᴛɪᴏɴꜱ— Hᴀʀᴍʟᴇꜱꜱ Eʀʀᴏʀ—Cᴏᴜʀᴛ Rᴜʟᴇꜱ.

The general harmless error standard of the General Court Rules does not control the specific provisions of the court rule concerning Standard Jury Instructions (GCR 1963, 516.6, 529.1).

3. Tʀɪᴀʟ—Iɴꜱᴛʀᴜᴄᴛɪᴏɴꜱ ᴛᴏ Jᴜʀʏ—Sᴛᴀɴᴅᴀʀᴅ Jᴜʀʏ Iɴꜱᴛʀᴜᴄᴛɪᴏɴꜱ— Pʀᴇꜱᴇʀᴠɪɴɢ Qᴜᴇꜱᴛɪᴏɴ.

An objection at trial is generally required to preserve errors based solely on a deviation from the Standard Jury Instructions.

4. Tʀɪᴀʟ—Iɴꜱᴛʀᴜᴄᴛɪᴏɴꜱ ᴛᴏ Jᴜʀʏ—Sᴛᴀɴᴅᴀʀᴅ Jᴜʀʏ Iɴꜱᴛʀᴜᴄᴛɪᴏɴꜱ— Oᴍɪꜱꜱɪᴏɴ—Dᴇᴠɪᴀᴛɪᴏɴ—Pʀᴇꜱᴜᴍᴘᴛɪᴏɴꜱ.

Where there is an omission of, or a deviation from, an applicable

and accurate Standard Jury Instruction, prejudicial error will be presumed provided that an erroneously omitted SJI was properly requested at trial, and provided in those cases where error is charged as a result of a deviation from a SJI, the deviation was brought to the attention of the trial court prior to the commencement of jury deliberations.

5. AUTOMOBILES—NEGLIGENCE—WITNESSES—CREDIBILITY—INSTRUCTIONS TO JURY.

Variations, although small, between deposition and trial testimony of defendant bus driver, in an action by plaintiff motorcycle riders arising out of a collision between a bus and a motorcycle, were significant where two important factual issues in the case hinged on small variations in the speed of the bus and the time required for the cycle to travel from the point where it became visible to the point of collision, and plaintiffs were entitled as a matter of law to an instruction informing the jury that it could consider these material variations in assessing the bus driver's credibility.

### DISSENTING OPINION

### M. S. COLEMAN, J.

6. TRIAL—INSTRUCTIONS TO JURY—STANDARD JURY INSTRUCTIONS—IMPEACHMENT.

*It was the duty of the trial judge to determine whether the facts of a case supported the Standard Jury Instruction on "impeachment" and the judge did not err in his finding that the facts failed to support an impeachment instruction where it was not reasonable to bring into issue the veracity of a witness whose estimates at trial concerning an automobile accident were close to those given in a deposition a year or so earlier.*

7. TRIAL—INSTRUCTIONS TO JURY—WITNESSES—IMPEACHMENT.

*Instructions that "as to the witnesses that appeared before you, you are the sole judges of the facts in the case and you must determine what or which witnesses you'll believe" and "you may take into account in determining what weight you'll place on the testimony of the witnesses, what they said in court and also any statements they may have made previously either in depositions or other times" were fair as to impeachment where a witness was consistently trying to reconstruct an accident as best he could and there were no facts upon which a jury could find that he was lying.*

8. TRIAL—INSTRUCTIONS TO JURY—DEPOSITIONS—STANDARD JURY IN-
   STRUCTIONS.

   *An instruction that evidence presented by the reading of deposi-
   tions is entitled to the same consideration as if the witness
   testified in open court from the witness stand was clearer than
   the Standard Jury Instruction on prior statements of a party
   and did not prejudice plaintiffs who had requested the Standard
   Jury Instruction (SJI 3.01[A]).*

9. TRIAL—STANDARD JURY INSTRUCTIONS.

   *The Standard Jury Instructions were intended to provide some
   assurance of reviewably safe instructions when they are appli-
   cable; however, lawsuits cannot always fit into straightjackets
   without injury to justice.*

*Lawrence W. Sperling* and *Sommers, Schwartz,
Silver, Schwartz, Tyler & Gordon, P. C.* (by *Edward
R. Stein*), for plaintiffs.

*Burke, Ryan, Rennell, Foster & Hood,* for de-
fendants.

SWAINSON, J. This is a personal injury action
brought by plaintiff-appellants Chester and Gail
Javis to recover damages resulting from a motor-
cycle-school bus collision on March 13, 1969. The
trial below resulted in a verdict of no cause of
action, upon which judgment was entered.
Plaintiff-appellants' motion for a new trial was
denied by the trial court. The denial was affirmed
by the Court of Appeals.[1] Plaintiff-appellants ap-
peal from the decision of the Court of Appeals that
found no reversible error in the trial court's re-
fusal to give plaintiff-appellants' requested Stan-
dard Jury Instruction.

On March 13, 1969, Chester Javis was operating,
and Gail Javis was a passenger on, a motorcycle
proceeding in a northerly direction along Hogback

---

[1] *Javis v Board of Education of the School District of Ypsilanti,* 48
Mich App 461; 210 NW2d 512 (1973); leave to appeal granted 391
Mich 764 (1974).

Road, a paved two-lane highway in Washtenaw County. At the same time, defendant-appellee Marvin Baltzell was operating a school bus owned by defendant-appellee board of education, and was proceeding in a westerly direction along Clark Road, also a paved two-lane highway, heading toward its terminus at Hogback Road. The intersection of Hogback and Clark is controlled by a stop sign for the Clark Road traffic only. The accident occurred when Baltzell, after having stopped his bus at the stop sign, attempted to make a left turn (south) onto Hogback and blocked the path of the northbound motorcycle.

The details of the collision as recounted by Chester Javis and Baltzell are markedly different, and constituted the only trial testimony which related to the accident itself. Although Gail Javis was a passenger on the motorcycle, her view of the intersection and the bus was effectively blocked by the head and body of Chester Javis. There were no other witnesses to the collision. Recounted below are the versions of the accident of each of the drivers involved.

a. *The Testimony of Plaintiff-Appellant Chester Javis*

Plaintiff-appellant Chester Javis was operating his motorcycle in a northerly direction along Hogback Road at approximately 35 miles per hour, with his wife Gail seated behind him. Because of the unusual topography of Hogback Road, he could not see the intersection of Clark and Hogback until he had rounded a curve, crested a hill, and was 400 to 450 feet south of the intersection. When he reached this point, Javis observed a school bus on Clark road, stopped at or near the stop sign. The plaintiff-appellant decelerated and

cautiously approached the intersection. When he reached a point approximately 100 to 150 feet from the intersection, and having observed no movement of the bus, Javis assumed that the bus would remain at the stop sign until the motorcycle cleared the intersection. Javis then resumed his speed of 35 miles per hour and attempted to traverse the intersection. Just after he resumed his speed, the bus pulled into the intersection in front of the Javis motorcycle and blocked the northbound lane. Javis immediately applied the brakes of the motorcycle but determined that he could not stop before striking the bus. He therefore attempted to maneuver the motorcycle in front of the bus into the southbound lane. The driver of the bus, however, failed to stop, and the bus and motorcycle collided in the southbound lane of Hogback Road.

### b. *The testimony of Defendant-Appellee Baltzell*

Defendant-appellee Baltzell testified that he brought his bus to a stop at or near the stop sign and checked both the northbound and southbound lanes of Hogback Road. Seeing no traffic on Hogback Road in either direction, Baltzell initiated a left turn into the southbound lane. At or about the time the front wheels of his bus crossed the center line of Hogback Road, Baltzell first observed the Javis motorcycle rounding the curve approximately 400 feet south of the intersection. Defendant-appellee Baltzell estimated the speed of the motorcycle at this time to have been 60 miles per hour. He further testified that upon observing the Javis motorcycle coming toward him he stopped the 30-foot bus and straddled the center line of Hogback, blocking the northbound lane and partially or wholly blocking the southbound lane. At

the time Baltzell brought the bus to a stop, the Javis motorcycle was approximately 100 feet from the bus with Javis attempting to brake and maneuver around the front of the bus into the southbound lane of Hogback. Javis was not, however, able to avoid a collision with the stationary bus.

The facts giving rise directly to the legal issues in the present appeal developed out of the cross-examination of Marvin Baltzell. On cross-examination it was established that Baltzell's trial testimony was, to varying degrees, inconsistent with his testimony at a pretrial deposition. In summary form the following inconsistencies arose:

1. The time taken by the Javis motorcycle to travel the 400 feet ·from the point it first became visible to Baltzell to the point of collision.

Deposition: "I believe something around seven seconds."

Trial: "[O]nly a matter of seconds. * * * Well, I believe it's something less than that [seven seconds] now that I think about it and I have been out there driving that road again."

2. The speed of the bus as it entered the intersection and began its southbound turn.

Deposition: "I was proceeding south going about five miles an hour."

Trial: "Less than five miles an hour. * * * Five or less, around there? *[sic]*"

3. The position of the bus in the southbound lane of Hogback Road at the time of collision.

Deposition: "I don't believe [Javis] could have [found room to maneuver around the bus] on the paved portion."

Trial: "I'm not sure if I blocked the whole lane. I know it [the bus] was in that lane, but I don't know how much I blocked."

Based on the above outlined inconsistencies,

plaintiffs' attorney requested that Standard Jury Instruction (SJI) 3.01(A) be included in the court's charge to the jury. SJI 3.01(A) entitled "Impeachment of a Party by Prior Inconsistent Statement or Conduct" instructs a jury as follows:

"In deciding whether you should believe a party who has testified, you may consider that at some earlier time he (said) (did) something that does not agree with what he testified to here on an important point. Because he is a party, what he (said) (did) earlier may be considered not only in deciding whether you should believe him, but also may be considered as evidence of the facts in this case."

The trial court refused to give SJI 3.01(A). Instead, the court fashioned its own instruction that it believed adequately covered the law. The court instructed:

"You're not bound to accept the testimony of witnesses where it might be unreasonable or not in accord with known facts in the case, but on the other hand, you're not to disregard the testimony of witnesses without case *[sic]*. You may take into account in determining what weight you'll place on the testimony of the witnesses, what they said in Court and also any statements they may have made previously, either in depositions or other times. So, it's up to you what I'm telling you, it's up to you the jury to determine what weight you place on the testimony of any of the witnesses.

\* \* \*

"In this case, also, we had certain evidence presented by the reading of depositions. I believe I told you just before the depositions were read that the depositions are a record of the sworn testimony of the persons who were disposed *[sic]*. This was taken before an authorized person and all parties and their attorneys had a right to be present and to examine and cross-examine the witnesses. So, this evidence is entitled to the same

consideration as you give the testimony as if the witness testified in open Court from the witness stand."

On appeal, plaintiffs urge this Court to hold that the failure of the trial court to deliver SJI 3.01(A) when properly requested to do so constitutes reversible error.

I

Under the direction of GCR 1963, 516.6(2):

"Pertinent portions of Michigan Standard Jury Instructions (SJI) published under authority of this subrule *shall* be given in each civil case in which jury instructions are given if (a) they are applicable and (b) they accurately state the applicable law." (Emphasis supplied.)

This court rule is stated in terms that should leave no doubt concerning the mandatory nature of the SJI. The SJI were compiled in an effort to uniformly present juries in civil cases with clear, concise and unbiased instructions to guide their deliberations. Secondarily, the SJI were also designed to conserve the energies of trial counsel and the trial courts by eliminating the need to draft and select proposed instructions on commonly encountered subjects for jury resolution. These enumerated benefits of the SJI are present, of course, only if the SJI are regularly employed by the trial courts. We therefore wish to clearly state that in our view, and under our supervisory powers we hold, that GCR 1963, 516.6(2) *requires* that the SJI be used whenever they are applicable, accurate, and requested by a party.

Stating our position that the SJI are mandatory whenever they are legally applicable to the case

and requested by a party does not, however, resolve the difficult issue of whether an appellate court should find reversible error in any failure to give a requested and applicable SJI. Counsel for appellants argues that a strict standard of review is a necessity if the SJI are, in practice, to achieve the ends for which they were designed. Counsel for appellees, in response, points out that GCR 1963, 516 makes no mention of a standard of review while GCR 1963, 529.1 establishes a harmless error standard for reviewing discrepancies in civil proceedings. See generally, 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), (1974 Cum Supp 155–156).

In terms of a legal analysis of the court rules, the positions of both counsel have merit. It can be stated in favor of appellants' argument that although GCR 1963, 516 does not specifically mention a reversible error standard, it does prescribe the giving of SJI in mandatory terms. It would be reasonable, and consistent with our policy in other instances of mandatory rules[2] to take a strict approach and confirm our position in favor of the mandatory use of the SJI by requiring any erroneous deviation to be treated as requiring reversal. Such a result would not ignore the harmless error rule of GCR 1963, 529.1, but rather would construe the specific requirements of GCR 1963, 516.6 as controlling over the general provisions of the harmless error rule. *Cf. Lasher v Mueller Brass Co,* 392 Mich 488, 495; 221 NW2d 289 (1974). In favor of appellees' position we recognize that GCR

[2] *See* for example, GCR 1963, 785.7(5) and *People v Shekoski,* 393 Mich 134, 224 NW2d 656 (1974), where the Court stated in part:

"The requirements for a valid guilty plea after June 1, 1973 are set forth specifically in GCR 1963, 785.7. The bench and bar are hereby advised that strict adherence to those requirements is mandatory and that neither substantial compliance nor the absence of prejudicial error will be deemed sufficient."

1963, 529.1 does serve the important functions of conserving judicial resources and bringing finality to litigation. Just as the SJI conserve the energies of the court by releasing it from the task of formulating instructions on common topics, the harmless error rule avoids requiring a retrial in civil cases unless the appellant is able to demonstrate that the claimed error was prejudicial. See generally, 3 Honigman & Hawkins, Michigan Court Rules Annotated, (2d ed), pp 226–230.

In the present context, since both asserted positions are reasonable and consistent with the General Court Rules as written, our responsibility is to adopt the position that we believe will best serve the state's jurisprudence. It is our judgment at this time that the Court should put its supervisory authority behind the consistent and uniform application of the SJI and hence we adopt a strict standard for SJI errors. Whatever wasted effort that will result from the reversal of those few cases wherein a trial court erroneously deviates from the SJI will be overcome by the benefits of conserved trial court time at the instruction stage, certainty to trial counsel as to how the law will be stated to the jury, and a clear and concise instruction for the jury to work with.

## II

In order to implement our decision in Part I we must fashion a workable guideline for the appellate review of errors in the SJI cases. In two other states, Missouri and New Mexico, courts have confronted a similar problem. Their solutions merit our consideration.[3]

---

[3] See generally, 49 ALR3d 128, Construction of Statutes or Rules Making Mandatory the Use of Pattern or Uniform Approved Jury Instructions.

In Missouri the court rule governing the use of the Missouri Approved Instructions is more straightforward than the Michigan rule. Missouri Supreme Court Rule 70.01(b)–(c) states:

"(b) Whenever Missouri Approved Instructions contains an instruction applicable in a particular case which the appropriate party requests or the court desires to submit, such instruction shall be given to the exclusion of any other on the same subject.

"(c) The giving of an instruction in violation of the provisions of this rule shall constitute error, its prejudicial effect to be judicially determined."

In construing this rule the Missouri Supreme Court placed a strong emphasis on the purposes that the Missouri Approved Instructions were adopted to fulfill. In *Brown v St Louis Public Service Co,* 421 SW2d 255, 257 (Mo, 1967), the Court determined that a stringent standard of review was the appropriate mechanism for furthering the correct use of the instructions. Its formulation for appellate review provides:

"Accordingly, where there is deviation from an applicable MAI instruction which does not need modification under the facts in the particular case, prejudicial error will be presumed unless it is made perfectly clear by the proponent of the instruction that no prejudice could have resulted from such deviation." 421 SW2d 255, 259.

The New Mexico standard was enunciated in the case of *Jewell v Seidenberg,* 82 NM 120; 477 P2d 296; 49 ALR3d 121 (1970). The New Mexico Supreme Court determined that its own harmless error court rule and the history behind the adoption of its Uniform Jury Instructions barred it from following the Missouri presumption of preju-

dice standard. New Mexico instead retained a
harmless error formulation but within a frame-
work that focuses appellate attention on the
claimed Uniform Jury Instruction error:

"However, although the use of UJI is mandatory, we
did not intend to place form above substance in adopt-
ing the instructions. The standards there [in the UJI]
set forth will be our first consideration, and any devia-
tion from them shall be held to be error. In determin-
ing whether it is reversible error, we will accept the
slightest evidence of prejudice, and all doubt will be
resolved in favor of the party claiming prejudice. Thus,
our determination will be made by viewing the record
in light of the standards we have adopted for a fair
trial, rather than indulging in a presumption of preju-
dice if the UJI is not followed." 82 NM 120, 124.

As stated in Part I, *supra,* we do not find that
the general harmless error standard of the Michi-
gan General Court Rules must control the specific
provisions of GCR 1963, 516.6. We are not bound
therefore by the same constraints as was the New
Mexico Court in *Jewell v Seidenberg, supra.* In
addition, we do not believe that a New Mexico
type rule provides the required strength for enforc-
ing the provisions of GCR 1963, 516.6. The New
Mexico rule is essentially a harmless error stan-
dard with perhaps a reduced burden of proof re-
quired to establish reversible error. It necessarily
is an uncertain standard and will not sufficiently
induce the close adherence to the mandatory char-
acter of the SJI that we hope to achieve.

The Missouri rule presents a more acceptable
approach, but it fails to sufficiently articulate the
responsibility for proper compliance with SJI pro-
cedure at the trial level. A rule should build into

itself incentives to promote compliance rather than mechanically reversing for error. The SJI are readily available and both counsel and the trial court equally share responsibility for seeing that SJI are delivered, and delivered in an accurate manner. In practice this means that the initial burden is on the parties to request SJI that they may deem accurate and applicable.[4] If the court should disagree, a party bears the burden of pointing out to the court why it considers the SJI applicable and accurate. Moreover, it would make little sense to reverse for errors made by the court in delivering SJI when counsel have the instructions available to monitor the court's charge. Should the court, for example, inadvertently misstate a SJI or erroneously substitute a word, it becomes counsel's duty to bring such error to the court's attention to allow for the appropriate correction. See, GCR 1963, 516.2.

We accordingly adopt a strict rule that we believe will provide economy in administration and fairness to the parties: Where there is an omission of, or a deviation from an applicable and accurate SJI, prejudicial error will be presumed; provided that the erroneously omitted SJI was properly requested at trial; and, provided that in those cases where error is charged as a result of a deviation from a SJI, said deviation was brought to

---

[4] Recently, in *Moskalik v Dunn,* 392 Mich 583; 221 NW2d 313 (1974), this Court held that an objection at trial is generally required to preserve errors based solely on a deviation from the SJI. In that context the majority stated:

"The requirement of a timely objection is not an arbitrary one. Its purpose is to avoid improper instruction and, if perchance an improper instruction which can be corrected has been given, to facilitate its correction before verdict, thereby avoiding costly new trials. The defect in the instruction was not of such magnitude as to constitute plain error requiring a new trial without regard to the failure to bring it to the attention of the judge." 392 Mich 583, 592.

*See, also, id.* at 392 Mich 583, 595–596 (WILLIAMS, J., dissenting.)

the attention of the trial court prior to the commencement of jury deliberations.

## III

In this case we are concerned with the failure to give a SJI. There is no dispute that SJI 3.01(A) was requested by plaintiffs and there is no issue here concerning the legal accuracy of SJI 3.01(A).[5] The only issue before the Court is whether SJI 3.01(A) was applicable to the facts of the case. It is defendants' primary contention on appeal that SJI 3.01(A) was not applicable. Defendants argue that the discrepancies between Baltzell's deposition and trial testimony were "immeasurably small" and indicated "little contradiction justifying an 'impeachment' instruction". Furthermore, defendants point out that the testimony on both sides was vague concerning the exact speeds and distances involved. "To therefore suggest that the defendant was impeached because of a conflict in his testimony of one second, or one mile an hour, and to ignore completely the vague estimates of the plaintiff, would be to work an injustice upon the defendant."

In our opinion, however, defendants' arguments overlook the neutrality and simplicity of SJI 3.01(A). The words of the instruction do not themselves focus attention on any particular party. They merely state the law of impeachment. If during the course of a trial only one party factu-

---

[5] GCR 1963, 516.6(1) provides that, "[n]either the original nor any amended standard jury instruction shall have the force and effect of Court Rules." This rule reflects the fact the court does not use its rule-making power to adopt the substantive law contained in any SJI. The Court speaks to the accuracy and continued validity of an aspect of the substantive law through actual cases in controversy. *See,* 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), (1974 Cum Supp 155–156).

ally becomes subject to SJI 3.01(A), the instruction does not thereby become unavailable. Both parties have access to the same pretrial procedures and the right to cross-examine the opposing party. If one party chooses not to, or factually cannot, impeach the opposing party, it cannot then complain that an impeachment instruction was given.

The simplicity of SJI 3.01(A) also allows it to be delivered in diverse factual situations. The instruction does not overemphasize or unduly highlight any testimonial discrepancies. It matter-of-factly informs the jury that they may consider previous statements of a party "[i]n deciding whether you should believe him".[6] The jury clearly retains the full responsibility to weigh all of the testimony and to determine what effect, if any, prior inconsistencies are to have on the party's credibility.

After reviewing the deposition and trial statements of Marvin Baltzell, we are of the opinion that the request for SJI 3.01(A) was a proper request. Although the variations between Baltzell's deposition and trial testimony concerned only a few seconds, feet or miles per hour, they were significant variations when viewed in the context of this case. Two very important factual issues in this case were the reasonableness of Baltzell's conduct after he became aware of the oncoming motorcycle and Baltzell's estimation of the speed of the motorcycle. These issues hinged on only small variations in the speed of the bus and on the time required for the cycle to travel the approximately 400 feet from its point of visibility to the point of collision. A properly instructed jury may in its deliberations have concluded that such dis-

_____

[6] We recognize that SJI 3.01(A) also allows the use of a party's previous statements as substantive evidence. Our discussion in this opinion is limited to a review of that portion of SJI 3.01(A) dealing with impeachment.

crepancies were only natural problems associated with recalling past events; but we believe that the plaintiffs, as a matter of law, were entitled to an instruction informing the jury that it could consider these material variations in assessing Baltzell's credibility. 3A Wigmore on Evidence (Chadbourn Rev), § 1040; McCormick, Evidence (2d ed), pp 67–69.

Reversed and remanded for a new trial.

Costs to plaintiffs.

T. G. KAVANAGH, C. J., and T. M. KAVANAGH, WILLIAMS, LEVIN, and J. W. FITZGERALD, JJ., concurred with SWAINSON, J.

M. S. COLEMAN, J. *(dissent)*. The thrust of the prevailing opinion is prophylactic, sending to all judges the message: "Use the Standard Jury Instructions *verbatim*". As substantial compliance is deemed insufficient, the wise judge from this date forward will read a SJI with no tailoring to fit the peculiar facts of the case. I see two flaws in the rule as applied to this case. (1) It was the duty of the trial judge to determine whether the facts of the case supported the SJI on "impeachment", (whether a witness is telling the truth and is or is not to be believed). The judge did not err in his finding that the facts failed to support an impeachment instruction. (2) In any event, the instructions as given incorporated the demands of the plaintiff and were not ipso facto error. I think we could have delivered a message to the judges without putting the parties and the county to the added trauma and expense of a new trial.

1.

It is not reasonable to bring into issue the

veracity of a witness whose estimates at trial
(concerning the accident) were so close to those
given in a deposition a year or so earlier *(i.e.,*
"about five miles an hour" as opposed to "five or
less, around there"; "something around seven sec-
onds" as opposed to "I believe it's less than seven
seconds now that I think about it and have been
out there driving that road again.")

I doubt that any of us could have come so close
—unless we had deliberately memorized the depo-
sition of long ago or had rehearsed under the aegis
of the attorney (a/k/a "woodshedding"). The proc-
esses of recall, memory and articulation normally
prevent one from being precisely uniform in de-
scribing an event long past. The issue is not
whether the witness was lying, but how accurately
he remembered these fine points.

From the record, I am left with the abiding
belief that this witness consistently was trying to
reconstruct the accident as best he could. There
were no facts upon which the jury of integrity
could find that he was lying. I agree with the
judge that an instruction on impeachment was not
required.

Nevertheless, the judge did instruct:

"Now, as to the witnesses that appeared before you,
you are the sole judges of the facts in the case and you
must determine what or which witnesses you'll believe
* * *.

                    *   *   *

"You may take into account in determining what
weight you'll place on the testimony of the witnesses,
what they said in court and also any statements they
may have made previously either in depositions or
other times.* * * "

Under the circumstances, I find the instructions fair as to that point.

2.

From the record of the pre-instruction conference, it appears that defense counsel was most anxious for an instruction that the deposition statements as well as trial statements of defendant Baltzell be considered by the jury as evidence (as in SJI 3.01[A]) of the facts to be determined by the jury. To this end, the judge gave the following instruction:

"In this case, also, we had certain evidence presented by the reading of depositions. I believe I told you just before the depositions were read that the depositions are a record of the sworn testimony of the persons who were disposed *[sic]*. This was taken before an authorized person and all parties and their attorneys had a right to be present and to examine and cross-examine the witnesses. So, this evidence is entitled to the same consideration as you give the testimony as if the witness testified in open court from the witness stand."

Compare this with the pertinent portion of SJI 3.01(A):

"Because he is a party, what he (said) (did) earlier may be considered * * * as evidence of the facts in this case."

The judge said the same thing in different words. I can see no prejudice to plaintiffs. To the contrary, the instruction given was clearer.

In my opinion, the cause of justice has not been

promoted when we so completely have forsaken the long-established concept that it is not error (certainly not prejudicial error) for the trial judge to refuse a requested charge when the charge actually given states correctly the law applicable to the case and covers the points which were proper.[1] If the instruction gives the law in such a way that the jury will understand and not be misled, it seems a futile exercise to send the case back for a new trial. The prevailing opinion, however, provides as to the mandatory nature of GCR 1963, 516.6:

"Such a result would not ignore the harmless error of GCR 1963, 529.1, but rather would construe the specific requirements of GCR 1963, 516.6 as controlling over the general provisions of the harmless error rule."

## Conclusion

The Standard Jury Instructions were intended to provide some assurance of reviewably safe instructions when such were applicable and to this end I would urge trial judges to employ SJI when appropriate. However, lawsuits cannot always fit into straightjackets without injury to justice.

This judge did not find the impeachment instruction applicable to the facts of the case—nor do I. Veracity is not the ability to estimate perfectly. The judge did, however, instruct according to plaintiffs' request as to use of the deposition as evidence of the facts to be determined by the jury.

---

[1] *Fisher v People,* 20 Mich 135 (1870); *McGinnis v Kempsey,* 27 Mich 363 (1873); *Joslin v Le Baron,* 44 Mich 160; 6 NW 214 (1880); *People v Beverly,* 108 Mich 509–512; 66 NW 379 (1896); *People v Sauerbier,* 173 Mich 521; 139 NW 260 (1913); *People v Auerbach,* 176 Mich 23; 141 NW 869 (1913).

Half of SJI 3.01(A) would have been less illuminating in the context of this case than the instruction actually given and the other half (impeachment) was inapplicable. As to the requirement for verbatim instructions, we should not become such slaves to little words that large meanings are sacrificed to their sanctity.

I would affirm.