STATE, Respondent, v. MORRISSY, Appellant.

*October 30—November 24, 1964.*

For the appellant there was a brief by *Kenney, Korf & Pfeil* of East Troy, and oral argument by *Francis J. Korf*.

For the respondent the cause was argued by *Betty R. Brown* and *William A. Platz,* assistant attorneys general, with whom on the brief were *George Thompson,* attorney general, and *William L. Seymour,* district attorney of Walworth county.

HALLOWS, J. The first issue is whether there is a sufficiency of the evidence to support the jury's verdict of a violation of the statute. In a criminal case as in a civil case the rule is, if there is any credible evidence which in any reasonable view supports the verdict it should not be disturbed on appeal. *State v. Johnson* (1960), 11 Wis. (2d)

130, 104 N. W. (2d) 379; *State v. John* (1959), 11 Wis. (2d) 1, 103 N. W. (2d) 304. The defendant contends: (1) That the legislature did not intend to cover operations such as those of the defendant, (2) that the word "principal" as used in the statute means "over 50 percent," and (3) gambling was not a principal use of the premises.

In the defendant's view of the facts the gambling which he permitted in his tavern was a sociable neighborhood game played only 25 to 26 times a year by the same men and over the years it could hardly be said this was a principal use or that he made any money off the games considering he furnished heat, lights, cards, chips, and the place. It is probably true a card game in a tavern even for modest stakes would not be considered within the ambit of sec. 945.01 (4), Stats., when it can be said that such game is merely an incidental use of the building. Prior to the Criminal Code, sec. 348.07, Stats. 1953, made it a misdemeanor for a person to permit gambling or to keep gaming devices, but this section was not carried over as such into the Criminal Code adopted in 1955. Unless it can be said that playing cards for money reaches such proportions as to amount to one of the principal uses of a tavern, such gambling does not fall within sec. 945.01 (4). The Criminal Code might have defined a gambling place in terms of any use for gambling but it did not. See Comment, vol. 5, 1953 Report of the Wisconsin Legislative Council, Judiciary Committee Report on the Criminal Code, p. 153, to proposed secs. 345.01 (4) and 339.22, which contents are now in sec. 945.01 (4).

Thus the question here is whether the extent of the gambling permitted and encouraged by the defendant and from which he derived $1 a player constitutes one of the principal uses of the defendant's tavern. The defendant argues the word "principal" must mean more than 50 per-

cent, relying on *McGill v. Baumgart* (1939), 233 Wis. 86, 288 N. W. 799. In that case the court dealt with the word "mainly" as applied to a traffic section of the statute which defined a residential district as being the territory contiguous to a highway where the frontage of such highway for a distance of 300 feet or more was "mainly" occupied by dwellings and buildings. The court there said, as commonly defined, the word "mainly" meant "principally," "chiefly," "in the main," and required occupancy of at least over 50 percent of the frontage by dwellings and business buildings. The case is not in point because sec. 945.01 (4), Stats., does not use the word "principal" as the single, main, chief, or dominant use but uses it in a comparative sense and contemplates several principal uses. In this context "principal" cannot be given a meaning of more than 50 percent of the use.

The term "one of the principal uses" contemplates a comparison of the degree of use between a class of principal uses and incidental uses. No mathematical definition can be given, and admittedly the line of demarcation is difficult to draw. It seems clear, however, that because one of the principal uses of a building is for the sale of liquor for consumption on the premises this does not necessarily exclude other principal uses or make other uses incidental either because such use is not so extensive in time or produces less profit. Consequently, we cannot agree with the defendant's contention that the Monday night poker game was an incidental use because it only occurred 25 or 26 times a year.

The use of a place or room at any given time may determine its principal use at that time but for the purpose of sec. 945.01 (4), Stats., such use must be considered in light of the overall or other uses of the place or room. A sufficient period of time must be considered to fairly ascertain

the character of the alleged gambling place in terms of principal uses. On this issue sec. 945.01 (4) (b) provides for the admission of evidence that a place has a general reputation as a gambling place or at or about the time in question was frequently visited by persons known to be professional gamblers or as frequenters of gambling places. We do not consider evidence offered either by the prosecution or defendant to be restricted in time to the period or dates alleged in the information. It may be that gambling is the sole use or one of the principal uses or it may be an incidental use to other current uses. We consider card games are not incompatible with the operation of a so-called neighborhood tavern and may be important to the operation. We believe the jury was justified in finding that one of the principal uses of the defendant's tavern was the playing of cards for money and the defendant's participation amounted to the operation of a gambling place.

The defendant contends the trial court erred in reinstructing the jury in reference to commercial gambling when it failed to give the entire instructions or at least the part referring to the meaning of the term "principal." In submitting the case to the jury the court gave, among other instructions, the common definitions of the word "principal" when used as a noun and as an adjective.

The jury deliberated for some three hours and then requested "an interpretation on commercial gambling and the rereading of the law again on the gambling that you read to us at the last." In response to a question from the court of exactly what the jury wanted, the foreman stated it wanted "an interpretation of commercial gambling" and "rereading of the law again on gambling in business places." The court then had the clerk read those portions of his instructions. They did not include the instruction on the meaning

of the word "principal." Upon the completion of the reading, the court asked whether the reinstruction covered the request and the foreman said it did.

The defendant now contends the court's failure to reread the instruction on the definition of "principal" was prejudicial error, relying on *People v. Gezzo* (1954), 307 N. Y. 385, 121 N. E. (2d) 380, and *State v. Henderson* (1954), 226 S. C. 227, 84 S. E. (2d) 626. Neither of these cases is in point. The request of the jury foreman did not include the request for that part of the instruction which contained the word "principal." Even if this were doubtful, the foreman stated the reinstruction complied with the request. In *Gezzo* the trial court did not satisfy the request of the jury for further instruction on one point. In *Henderson* the court denied the attorney's request for an instruction following the court's reinstruction to the jury. Here, the defendant's attorney did not ask the court to reinstruct on the meaning of the word "principal." A court in reinstructing a jury fulfils its duty when it satisfies the jury it has complied with the request. *People v. Rigney* (1961), 55 Cal. (2d) 236, 10 Cal. Rptr. 625, 359 Pac. (2d) 23; *People v. Sauerbier* (1913), 173 Mich. 521, 139 N. W. 260.

*By the Court.*—Judgment affirmed.