**Daniel LASHBROOK, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

**No. 06A01–8906CR00219.**

Court of Appeals of Indiana, First District.

Feb. 26, 1990.

---

Charles R. Deets III, John S. Antalis, Heide, Sandy, Deets, Kennedy Schrader & Antalis, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Danielle Sheff, Deputy Atty. Gen., Indianapolis, for appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Daniel Lashbrook appeals his convictions of four counts of conversion, a class A misdemeanor;[1] gambling, a class B misdemeanor;[2] and professional gambling, a class D felony,[3] all arising out of his involvement in an "airplane investment program," a type of pyramid scheme. We affirm.

## FACTS

On December 1 and 3, 1987, meetings were held at the home of James Schenck in Lebanon, Boone County, Indiana, at which Dennis Schenck directed a presentation on an "airplane investment program." An "airplane" program is a variation of a pyramid scheme called an "airplane" because the participants are designated pilots, co-pilots, crew members and passengers. In this particular plan, each "airplane" contained one pilot, two co-pilots, four crew members, and eight passengers. Each passenger paid $1500 for a seat on the airplane and this money was be given to the pilot. The airplane then would break into two sections, with each co-pilot becoming a pilot and each passenger becoming a crew member. Eight new passengers then would be recruited to fill the two new airplanes. Thus, as new members were recruited, per-

---

1. Ind.Code § 35–43–4–3.

2. Ind.Code §§ 35–45–5–2; 35–45–5–6.

3. Ind.Code § 35–45–5–3.

sons on the lower rungs of the ladder advanced with the goal of achieving pilot status and receiving approximately $10,000. If new members were not recruited, the airplane "crashed," and the investment was lost.

At the December meeting, Kristi Harrison, Steven White, Roberta Harmon, Brad Wheeler and others purchased $1500 seats on an "airplane" of which Lashbrook was the pilot. Each investor paid $1500 in cash to the two co-pilots who paid the money, counted as $9000, to Lashbrook. Lashbrook accepted the money and attempted to encourage others in attendance to invest. At this meeting the investors were told by the presenter that the program was legal, free of risk, and that their money would be returned upon request.

Sometime after the December 3rd meeting, Harrison, White, Harmon, and Wheeler contacted or attempted to contact Lashbrook at his home in Lafayette in Tippecanoe County, requesting the return of their money. When he refused to return the money, the named investors contacted the Boone County prosecuting attorney who sent demand letters to Lashbrook for the return of the named investors' money. When this action proved unavailing, Lashbrook was indicted for and convicted of conversion, gambling, and professional gambling.

### ISSUES

Lashbrook raises four issues on appeal which we have restated and renumbered as follows:

1. Was the proper venue of the prosecution for conversion in Boone County?

2. Can the convictions be sustained by reason of Lashbrook's involvement in the "airplane investment program" as a pyramid promotional scheme, or are such ventures subject only to civil sanctions?

3. Was the evidence sufficient to convict Lashbrook of gambling?

4. Was the evidence sufficient to convict Lashbrook of professional gambling?

### Issue One

Lashbrook contends that the venue of the prosecution for conversion properly was in Tippecanoe County because that is where his control over the money became unauthorized. He is mistaken.

■ Lashbrook obtained possession of the investor's money in Boone County. A person may be tried for conversion in any county in which he exerts unauthorized control over the property of another. Ind. Code § 35–32–2–2(a); *Beaty v. State* (1882), 82 Ind. 228 (where property is embezzled in one county and taken to another, jurisdiction of the offense is in either county).

Because Lashbrook obtained the money in Boone County, his control over it started there. Thus, assuming his control was unauthorized at the outset, which we hold it was as explained in a later portion of this opinion, venue properly lay in Boone County. Lashbrook's control did not become unauthorized only after he had removed the money to Tippecanoe County and refused the requests for return.

### Issue Two

Gambling is prohibited by Ind.Code § 35–45–5–2, and a person who knowingly or intentionally engages in gambling is guilty of a class A misdemeanor. *Id.* Ind. Code § 35–45–5–1 provides:

"Gambling means risking money or other property for gain, contingent in whole or in part upon lot, chance, or the operation of a gambling device; but it does not include participating in:

(1) Bona fide contests of skill, speed, strength, or endurance in which awards are made only to entrants or the owners of entries; or

(2) Bona fide business transactions that are valid under the law of contracts."

■ The question presented for our decision is whether Lashbrook's participation in the "airplane" pyramid scheme constituted gambling. Lashbrook contends it did not because there was no evidence he risked money or property for gain. We disagree.

"Gain" means the direct realization of winnings. IC 35–45–5–1. Lashbrook, as a "pilot", received money from the investors

who purchased a seat on the airplane. According to the evidence explaining the operation of the "airplane" scheme, it is clear that Lashbrook had to have paid money to gain a seat on the airplane from whence he ultimately advanced to "pilot" status. Thus, Lashbrook risked money for gain. The question then becomes whether such risk for gain was contingent in whole or in part upon lot or chance.

In *Solon v. Meuer* (N.Y.City Cir.1987) 141 Misc.2d 993, 539 N.Y.S.2d 241, an identical "airplane" scheme was held to constitute an illegal lottery, and the so-called "investor" prevailed under a statute allowing a gambling loser to recover losses from the winners.

The Supreme Court of Rhode Island in *Roberts v. Communications Investment Club, etc.* (R.I.1981) 431 A.2d 1206, held a pyramid scheme constituted an illegal lottery. That court said a lottery was a scheme having three essential elements: consideration, chance, and prize. In determining that all three elements were present in a "pyramid" scheme, the court quoted the following:

"Pyramid schemes possess the three essential elements of a lottery. The substantial sums participants invest in the schemes constitute the necessary consideration and the receipt by the participants of profits resulting from the recruiting of others satisfies the prize element. The element of chance is present because the financial gain of any participant is the result of factors outside his control: the action of prior participants, the degree of market saturation, and the prospects of an individual continuing the recruiting chain. (Footnotes omitted.) *Pyramid Schemes: Dare to Be Regulated*, 61 Geo.L.J. 1257, 1269 (1973)." 431 A.2d at 1212.

In *State v. Dahlk* (1983), 111 Wis.2d 287, 330 N.W.2d 611, the Wisconsin Court of Appeals affirmed a conviction of permitting real estate to be used as a gambling place in violation of statute where the real estate was used for "pyramid club" meetings. The court held pyramid schemes are illegal lotteries and have no elements of a bona fide business transaction. In so holding, the court said:

"Defendant contends that, because skill rather than chance determines whether an investor ultimately receives $32,000, no lottery was conducted at his warehouse. We disagree. A lottery offers the opportunity to win a prize, 'the award of which is determined by chance, even though accompanied by some skill.' Sec. 945.01(2)(a), Stats. Chance rather than skill must therefore be the dominant factor controlling the award in a lottery. Most jurisdictions apply the 'dominant factor' test, by which a scheme is a lottery if chance dominates even though some degree of skill or judgment is present. *Roberts v. Communications Iv. Club*, 431 A.2d 1206, 1211 (R.I.1981)."

"*Roberts, supra*, involved the same scheme as defendant's. The *Roberts* court said that although the scheme 'may have involved some degree of skill or judgment, it is clear that the element of chance permeated it.' 431 A.2d at 1211. Other jurisdictions have concluded that similar pyramid or chain schemes are dominated by chance because obtaining the prize depends on factors beyond the investor's control and are lotteries." [citations omitted.]

"Defendant contends that skill dominates over chance because the chain process depends on the efforts of individuals and because each investor will try to recruit new members. We disagree.

Whether an investor in the club receives a profit depends on when he entered the chain, the number of persons he induces to pay $1,000 to get in, the number of persons his buyers and their buyers induce to pay $1,000, and whether the market is saturated. The earliest club members, those who enter at or near the top of the pyramid, have a greater chance of profiting than do latecomers. Viewing the scheme as a whole, an investor's profit depends on occurrences he cannot control: whether other people induce still others to pay $1,000 to join the scheme." 330 N.W.2d at 617.

The Wisconsin court also rejected the defendant's claim that the pyramid scheme was merely a speculative investment saying:

"The pyramid club has no element of a bona fide business transaction. It simply involves money exchanges. No contracts are entered for the purchase or sale of securities or commodities. A pyramid club does not fall within the exception under sec. 945.01(1)(a).[4]

"The analogy of a pyramid club to a speculative investment is unpersuasive, even in the absence of a statute comparable to sec. 945.01(1)(a)1, Stats. Unlike a speculative venture, defendant's club has a classic gambling trait: shuffling a given number of dollars between participants with no effect on the total wealth of the group. A speculative investment may increase or decrease the wealth of all investors in proportion to their investments. The skill involved in locating a sound speculative investment is far different from the skill of shrewd operators who start a money pyramid and locate investors before the pool of potential members is exhausted."[5] 330 N.W.2d at 618.

Thus, the Wisconsin Court of Appeals had no trouble determining that a pyramid scheme constituted an illegal lottery and that using one's premises for conducting such activity constituted commercial gambling in violation of Wisconsin statutes.

Based upon the foregoing authorities, we hold that the "airplane investment program" pyramid scheme involved in this case was an illegal lottery,[6] and constituted illegal gambling as prohibited by IC § 35–45–5–2.

---

4. The applicable Wisconsin statute contained exceptions very similar to IC § 35–45–5–1(2).

5. Both the Wisconsin court in footnote 5 to *Dahlk,* 330 N.W.2d at 618, and the Rhode Island court in *Roberts,* 431 A.2d at 1212, point to the geometric progression involved in the recruitment of new memberships and to the market saturation problem thereby created.

6. The Indiana Constitution was amended to delete the constitutional prohibition on all lotteries by amendment approved by the voters in the 1988 general election. However, only the

---

Lashbrook's contention that his conduct was subject to only civil sanctions is in error as our discussion of Issue Four establishes. Our comments in that regard are applicable equally to this issue.

*Issue Three*

Our statute pertaining to professional gambling, in relevant part, provides:

"A person who knowingly or intentionally:

\*      \*      \*      \*      \*      \*

(4) Conducts lotteries, gift enterprises, or policy numbers games, or sells chances therein;

\*      \*      \*      \*      \*      \*

(6) Accepts, or offers to accept, for profit, money or other property risked in gambling; commits professional gambling, a class D felony."

Ind.Code § 35–45–5–3.

■ Lashbrook next contends the evidence was insufficient to convict him of professional gambling because he did not accept or offer to accept, for profit any money or other property risked in gambling. He contends any money he received was a "gain" and not a "profit;"[7] consequently, he cannot be convicted of professional gambling because the money he received constituted a "gain" as distinguished from a "profit." Further, he argues he cannot be convicted of both gambling and professional gambling. We disagree.

Lashbrook focuses his argument on subsection (6) of IC § 35–45–5–3, but overlooks subsection (4) concerning lotteries. The statute is phrased in the disjunctive. The

---

Indiana State lottery authorized by Ind.Code § 4–30–1–1 et seq. is permitted. Ind.Code § 4–30–18–1 specifically provides: "This article does not authorize any lottery except the lottery operated by the commission under this article." Therefore, the pyramid scheme here involved is indeed an illegal lottery.

7. IC § 35–45–5–1 defines "gain" as "The direct realization of winnings." On the other hand, "profit" is defined as "a realized or unrealized benefit (other than a gain) and includes benefits from proprietorship or management and unequal advantage in a series of transactions.

"airplane investment program" was a lottery. The evidence demonstrated Lashbrook's conduct in encouraging persons to "invest" in the scheme, thereby meeting the test of conducting a lottery or selling chances therein.

*Issue Four*

Concerning this issue, Lashbrook argues his activities did not warrant criminal prosecution and conviction because his involvement was with a pyramid promotional scheme subject only to civil, not criminal sanctions, and that his control over the funds was authorized and with the consent of the investors. Again, we reject Lashbrook's claims.

Lashbrook bases his first contention on his interpretation of the provisions of Ind. Code §§ 24–5–0.5–2, 24–5–0.5–3, and 24–5–0.5–4 relating to deceptive consumer sales and pyramid schemes. He contends that because those provisions provide only civil remedies, no criminal sanctions may be imposed. Again, Lashbrook is in error. He has not been prosecuted for violating the deceptive practices act. Rather, he has been prosecuted and convicted for violating criminal statutes prohibiting gambling, professional gambling, and conversion. Previously, we have dealt with the gambling and professional gambling charges. Next, we turn to a consideration of the conversion charges.

■ Criminal conversion consists of knowingly or intentionally exerting unauthorized control over property of another person. Ind.Code § 35–43–4–3. Control over property of another is unauthorized if it is exerted, *inter alia,* in a manner or to an extent other than that to which the other person has consented, or by creating or confirming a false impression in the other person. Ind.Code § 35–43–4–1(b). The State argues Lashbrook exercised control over the money in a manner other than that in which the participants consented, and that he confirmed a false impression because he took the money after the participants had been assured the program was legal, risk-free, and that their money would be returned upon request. We agree with the State.

It was established by the evidence that the participants were told the "airplane" scheme was legal and risk-free, and that their money would be returned upon request. Thus, a false impression was created or confirmed, and the delivery of the money by the investors was upon the condition it would be returned upon request. Lashbrook's participation in the scheme was sufficient to establish at least the confirming of a false impression. Further, it could be inferred from his refusal to return the money that he never intended to do so; consequently, his control over the money was in a manner or to an extent other than that to which the investors consented, and was unauthorized. *See Marsillett v. State* (1986), Ind., 495 N.E.2d 699 (unauthorized control includes all situations where control over property of another is exerted without the other person's consent, or in a manner that exceeds the scope of that consent.).

Although Lashbrook's arguments appear to be challenges to the applicability of the statutes violated, because he phrases his issues in terms of sufficiency of the evidence, we must reiterate our standard of review in sufficiency cases. We neither reweigh the evidence nor judge witness credibility. Rather, we look exclusively to the evidence most favorable to the State, and all reasonable inferences flowing therefrom. If there is substantial evidence of probative value to support the conviction, it will not be overturned. *Jewell v. State* (1989), Ind., 539 N.E.2d 959. Suffice it to say, the evidence here supports the convictions.

Judgment affirmed.

BAKER and CONOVER, JJ., concur.